UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

LORENZO DAVIS,

                                Plaintiff,

              v.                                                    1:07-CV-292
                                                                    (FJS/DRH)
UNITED STATES OF AMERICA,

                                Defendant.

_____

APPEARANCES                                OF COUNSEL

E. STEWART JONES LAW FIRM, PLLC            E. STEWART JONES, JR., ESQ.
Jones Building
28 Second Street,
Troy, New York 12180
Attorneys for Plaintiff

OFFICE OF THE UNITED                       BARBARA D. COTTRELL, AUSA
STATES ATTORNEY
James T. Foley U.S. Courthouse
445 Broadway
Albany, New York 12207-2924
Attorneys for Defendant

SCULLIN, Senior Judge

## MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

On March 20, 2007, Plaintiff filed this action pursuant to the Federal Tort Claims Act

("FTCA"), 28 U.S.C. § 1346(b) and 2671 *et seq.*, for injuries he sustained on May 12, 2006, as a

result of a collision between his vehicle and a United States Postal Service van in Troy, New

York.

The Court held a bench trial on March 2, 2009. At the trial, Plaintiff testified and called

Anthony Riccardi, an economist and actuary, as a witness.  In addition, Plaintiff introduced the video depositions of Dr. Hrustich, who performed surgery on Plaintiff in August 2006; Dr. Flik, who performed surgery on Plaintiff's neck and shoulder in December 2006; and Dr. Whalen who performed cervical neck surgery on Plaintiff in 2007.  Defendant called as witnesses Dr. Hanumappa Visweswraiah, Plaintiff's primary care physician at the Albany Veterans Administration Hospital; James Fox, the Postal Service employee, who was driving the vehicle involved in the collisions with Plaintiff on May 12, 2006; Timothy Joyce, a Postal Service supervisor who took photographs of the accident at the time it occurred; and Stephen Seney, a Troy Police Officer who responded to the scene of the accident.

At the end of Plaintiff's case, Defendant moved to dismiss the matter on the ground that Plaintiff had not sustained his burden of proof.  *See* Trial Transcript at 82.  The Court denied that motion because the only testimony before the Court was Plaintiff's and he had testified that the postal truck had pulled out in front of him.  *See id.*  At the conclusion of the trial, the Court directed the parties to file proposed findings of fact and conclusion of law within two weeks.

Having reviewed the parties' post-trial submissions as well as the trial transcript, the Court makes the following findings of fact and conclusions of law.

## II. UNDISPUTED FACTS

**A.     The collision**

1. On May 12, 2006, in the late afternoon, Plaintiff was involved in a vehicular collision with a United States Postal Service vehicle.

2. At the time of the collision, Plaintiff was traveling westbound on Broadway in Troy,

New York; and Mr. Fox, who was operating the postal vehicle, was traveling on Williams Street, which runs perpendicular to Broadway.

3. At the time of the accident, the view of both drivers was impeded by a delivery truck that was parked in front of a restaurant on Broadway.

4. At the time of the collision, Mr. Fox was traveling at no more than 10 miles per hour; and Plaintiff was traveling at no more than 30 miles per hour.

5. In response to questioning at the accident scene, both Plaintiff and Mr. Fox indicated that they were not injured.

6. Both Plaintiff and Mr. Fox were able to drive their respective vehicles away from the scene.

7. An inspection of the vehicles immediately following the collision showed that the postal vehicle had a very small dent and that Plaintiff's vehicle had a very small mark above the license plate and a small crack around the bumper.

8. The police did not issue any tickets as a result of the collision.


**B.      Plaintiff's medical history**

1. After the collision, Plaintiff drove his car home and took a shower.  After arriving home, Plaintiff had a little problem with his left shoulder.

2. Plaintiff sought medical attention at the VA Hospital a couple of hours after the collision.  When he arrived he told the hospital staff that he had been involved in an accident and he felt like his left shoulder was dislocated.

3.  At that time, hospital personnel took an x-ray of his left shoulder.  The doctor told

Plaintiff that his shoulder was not dislocated, gave him some pills, prescribed physical therapy and sent him home.

4. Plaintiff returned to the VA Hospital each day for several days after the collision.  Each time that he returned to the hospital, the staff x-rayed his shoulder and sent him home.

5. At some point in mid-June 2006, Plaintiff had an MRI of his left shoulder.

6. On or about June 24, 2006, after he had the MRI, Plaintiff saw Dr. Hrustich, who told him that the problem was with his neck not his shoulder.  Dr. Hrustich told Plaintiff that he needed surgery on his neck, which he had on August 28,2006, at Memorial Hospital in Albany.

7. Plaintiff had previously had surgery on his neck in 1996 at the VA Hospital in Albany.

8. After his neck surgery in August 2006, Plaintiff was referred to Dr. Congiusta at Northeast Orthopedics for pain in his left shoulder.

9. Dr. Flik performed surgery on Plaintiff's left shoulder in December 2006.

10. After the surgery on his shoulder, Dr. Flik referred Plaintiff to Dr. Whalen, who operated on Plaintiff's spine in April 2007.

11. Dr. Whalen's surgery was designed to correct the problems with Dr. Hrustich's surgery.

12. Plaintiff was involved in an automobile-pedestrian accident in February 2007.  He was crossing the street, and a car hit him in his left hip.  He suffered injury to his lower back.

13. Dr. Whalen performed additional surgery on Plaintiff's back as a result of the injury that Plaintiff sustained in this vehicular-pedestrian accident.

14. Plaintiff has been addicted to pain medications since the late 1990s.

**C.      Plaintiff's income information**

1. Plaintiff's W-2s for 2004 showed income of $4,000, $2,244, $601.92 and $105, respectively.  He also received a 1099-R that indicated income in the amount of $3,384.43. According to these records, Plaintiff had income in the total amount of $10,335 for the year 2004.

2. In the year 2005, Plaintiff's W-2s showed a total income of $29,499.

3. In the year 2006, until the time of the collision, Plaintiff's W-2s showed income totaling $10,227.

4. According to the New York State Department of Labor's website, in 2009, the hourly wage for asbestos removers was $36 per hour.

### III. FINDINGS OF FACT AND CONCLUSIONS OF LAW

**A.      Legal principles**

Pursuant to the FTCA, "the federal government has consented to be sued for the 'negligent or wrongful acts or omissions' of its employees acting within the scope of their employment 'under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.'" *Patrello v. United States*, 757 F. Supp. 216, 218 (S.D.N.Y. 1991) (quoting 28 U.S.C. § 1346(b)).

Since Plaintiff's motor vehicle accident occurred in New York, "liability is determined under the law of New York." *Id.* (citations omitted).  If the United States were a private person, the applicable law under these circumstances "for recovery for personal injury would be Article 51 of New York's Insurance Law," commonly referred to as New York's "No-Fault Law." *Id.*

(citing N.Y. Insurance Law §§ 5101-5108 (McKinney 1985 & Supp. 1988)).  Thus, the FTCA

requires the Court to apply such law to the facts of this case.  *See id.*

As an initial matter, "[u]nder New York law, the plaintiff must establish three elements in

order to prevail on a negligence claim: (1) that defendant owed plaintiff a duty of care; (2) that

defendant breached that duty; and (3) that the breach was the proximate cause of plaintiffs'

injuries."  *Hodder v. United States*, 328 F. Supp. 2d 335, 341 (E.D.N.Y. 2004) (citation omitted).

When the claim involves the operation of motor vehicles, "New York's Vehicle and Traffic Law

[provides that] it is the duty of both drivers to operate their automobiles with reasonable care,

taking into account the actual and potential dangers existing from weather, road, traffic and other

conditions."  *Id.* (citations omitted).  Furthermore, "[b]oth drivers are under a duty: (1) to

maintain a reasonably safe rate of speed, . . . (2) to have their automobiles under reasonable

control, . . . (3) to keep a proper lookout, under the circumstances then existing, to see and be

aware of what was in their view, . . . and (4) to use reasonable care to avoid an accident. . . ."  *Id.*

(internal citations omitted).

Assuming that the plaintiff shows that the defendant was to some degree negligent, the

court must then apply New York's No-Fault Law to determine if (1) the plaintiff can maintain a

tort claim against the defendant under this statute and (2), if so, what damages, if any, he is

entitled to recover on this claim.

The New York Court of Appeals "has described the New York no-fault law as two-

pronged: 'One prong deals with compensation; the other with limitation of tort actions.'"  *Patrello*,

757 F. Supp. at 218 (quoting *Montgomery v. Daniels*, 28 N.Y.2d 41, 46, 378 N.Y.S.2d 1, 4, 340

N.E.2d 444, 446 (1975)).  Furthermore, "[t]he no-fault system guarantees prompt and full

compensation for economic losses up to $50,000 without the necessity of recourse to the courts and simultaneously eliminates recovery for non-economic losses (i.e., pain and suffering) in relatively minor cases." *Id.* at 219 (citations omitted).

The *Patrello* court explained that "§ 5103 requires insurers to compensate accident victims for their 'basic economic loss' on account of personal injury by promptly distributing what are termed 'first party benefits' without regard to fault." *Id.* "'Basic economic loss' essentially consists of medical expenses, loss of earnings and other 'reasonable and necessary' expenses up to $50,000 per person." *Id.* (quoting Section 5102(a)). "'First party benefits' means reimbursements for basic economic loss minus certain deductions . . . ." *Id.* (citing Section 5102(b)).

Section 5104, however, "imposes two limitations on tort recovery for personal injuries in actions between 'covered persons' as defined in § 5102(j), that is, persons entitled to first party benefits." *Id.* (footnote omitted). "First, the injured party may not duplicate recovery of first party benefits but may recover in tort only that basic economic loss which exceeds $50,000." *Id.* "Second, with regard to 'non-economic loss' or pain and suffering (*see* § 5102(c)), recovery is limited to that associated with 'serious injury' as defined in § 5102(d)." *Id.*

The *Patrello* court explained that

> [r]eading §§ 5103 and 5104 together, one can see that the no-fault law thus provides covered persons with a trade-off. In exchange for their entitlement to prompt payment of first party benefits under § 5103 without regard to fault, covered persons must also accept § 5104's tort recovery limitation in actions against other covered persons.

*Id.*

Therefore, to determine whether Plaintiff can maintain this action against the United States under § 5104, the Court must determine whether his basic economic losses resulting from the motor vehicle collision exceeded $50,000; and, if Plaintiff is seeking damages for non-economic loss, i.e., pain and suffering, the Court must determine whether Plaintiff suffered a "serious injury" within the meaning of § 5102(d) as a result of the accident.

For purposes of New York's No-Fault Law,

> "Serious injury" means a personal injury which results in death; dismemberment; significant disfigurement; a fracture; loss of a fetus; **permanent loss of use of a body organ, member, function or system; permanent consequential limitation of use of a body organ or member; significant limitation of use of a body function or system**; or a medically determined injury or impairment of a non-permanent nature which prevents the injured person from performing substantially all of the material acts which constitute such person's usual and customary daily activities for not less than ninety days during the one hundred eighty days immediately following the occurrence of the injury or impairment.

N.Y. Ins. Law § 5102(d) (emphasis added).

"An injured party who suffers 'minor' injuries that do not fall within one of these categories [listed in § 5102(d)] has no right to recover for pain and suffering . . . ." *Hodder*, 328 F. Supp. 2d at 348 (citations omitted).  Furthermore, New York courts strictly construe the no-fault statute.  *See id.* (quotation omitted).

"[T]o prove a permanent consequential limitation or significant limitation of use, a plaintiff must demonstrate '"something more than . . . a minor, mild or slight limitation of use."'" *Mastrantuono v. United States*, 163 F. Supp. 2d 244, 254 (S.D.N.Y. 2001) (quotation omitted). Furthermore, "'[t]he significance of the limitation must be supported by credible medical evidence and must be objectively measured and quantified.'"  *Id.* (quotation and other citation

-8-

omitted).  Finally, "[t]o prove a permanent loss of use of a body organ, member, function or system, a plaintiff must show a total loss of use."  *Id.* (citation omitted).

Moreover, "[i]t is well settled that to establish a claim of 'serious injury,' a plaintiff must introduce objective and credible medical evidence of such an injury."  *Mastrantuono*, 163 F. Supp. 2d at 254 (citations omitted).  Thus, "a diagnosis based solely on the patient's subjective expressions of pain, and a range of motion test, is insufficient to support an objective finding of serious injury."  *Id.* (citation omitted).  On the other hand, "MRIs, x-rays and CT-scans are objective and credible medical evidence of a serious injury because they do not rely on the patient's complaints of pain."  *Id.* (citations omitted).

"To prove the extent of a physical limitation, "an expert's designation of a numeric percentage of a plaintiff's loss of range of motion can be used to substantiate a claim of serious injury.'""  *Hodder*, 328 F. Supp. 2d at 349 (quotation omitted).  Furthermore, "'an expert's qualitative assessment of a plaintiff's condition also may suffice, provided that the evaluation has an objective basis and compares the plaintiff's limitations to the normal function, purpose and use of the affected body organ, member, function or system.'""  *Id.* (quotation omitted).

To determine whether a "significant limitation or use of a body function or system" supports a finding of "serious injury," "the court compares 'the degree or qualitative nature of an injury based on the normal function, purpose and use of the body part.'"  *Id.* at 354 (quotation and other citation omitted).  Although the plaintiff is not required to prove permanence, he "must show a limitation that is significant in terms of duration as well as degree."  *Id.* at 354-55 (citations omitted).  Furthermore, although "there is no set percentage for determining whether a limitation in range of motion is sufficient to establish 'serious injury,' the cases have generally

found that a limitation of twenty percent or more is significant for summary judgment purposes."
*Id.* at 356 (citations omitted).

### B.    Negligence

Plaintiff had the burden of proof to demonstrate that Mr. Fox was negligent.  To do so, he had to prove that Mr. Fox owed him a duty of care, that he breached that duty, and that his breach was the proximate cause of his injuries.  Based on all of the evidence before the Court, Plaintiff has failed to meet his burden of proof.

Although Mr. Fox owed Plaintiff a duty of care, i.e., a duty to operate his vehicle with reasonable care, there is nothing in the record to demonstrate that Mr. Fox breached that duty. His duty to operate his vehicle with reasonable care required Mr. Fox to maintain a reasonably safe rate of speed, to have his vehicle under reasonable control, to keep a proper lookout under the existing circumstances, and to use reasonable care to avoid an accident.  There is nothing in the record to indicate that Mr. Fox breached that duty.  He testified that, because there was a delivery truck parked on one side of the street, which was blocking the intersection and his view, he edged out to see if anyone was coming; and, when he did not see anyone, he proceeded.  *See* Trial Tr. at 102-03.  He further stated that, at most, he was going 10 miles per hour, if not less. *See id.* at 103.

Plaintiff's testimony does not conflict with Mr. Fox's.  Plaintiff stated that he didn't know how fast he was going, but he wasn't speeding.  *See* Trial Tr. at 11.  He testified that he tried to stop, but he couldn't and, thus, he was unable to avoid hitting Mr. Fox's vehicle.  *See id.* at 12.

Based on this evidence, the Court concludes that Plaintiff has failed to demonstrate any

negligence on the part of Mr. Fox.  Accordingly, the Court finds that Defendant is not liable for

any injuries that Plaintiff may have suffered as a result of this collision.


C.     **Damages**

Even if the Court were to assume that Plaintiff had established that Mr. Fox was

negligent, to maintain an action to recover any economic loss that he suffered as a result of Mr.

Fox's negligence, Plaintiff must demonstrate that he sustained basic economic loss in excess of

$50,000.  Plaintiff has not met this burden.  First, there was no evidence that Plaintiff has, or will

in the future have, any medical costs related to his injuries.  Second, Plaintiff only produced W-

2s and tax returns for 2004-2006.  He testified that he did not file tax returns for the years 1996

until 2004.

Mr. Riccardi, who testified as Plaintiff's economic and actuarial expert, was totally

incredible.  Although Mr. Riccardi reviewed Plaintiff's W-2s for the years of 2004, 2005, and

2006, which showed earning of $10,355, $29,499, and $10,227, respectively, he only considered

the 2005 income as a basis for his projection about Plaintiff's earnings throughout the rest of his

work life, i.e., through age 66.  *See* Trial Tr. at 61-62.  When asked why he did not average the

income figures for all three years to determine a basis for his projection, he stated that it was

because, based on his conversations with Plaintiff, the 2005 figure was more reflective of his

earning capacity.  *See id.* at 67.  Mr. Riccardi also testified that he was not aware that Plaintiff

had been involved in another automobile accident in February 2007 and, therefore, did not

consider whether Plaintiff was more or less employable after February 2007.  *See id.* at 69.

Furthermore, although Plaintiff had done masonry work, construction work, and asbestos

removal work, Mr. Riccardi only considered the State's hourly rate for asbestos removers when calculating Plaintiff's loss of income. *See id.* at 70.

With respect to medical evidence, there is no credible evidence that, as a result of the collision, Plaintiff suffered any injury other than injury to his left shoulder. Furthermore, there is no credible medical evidence that, after the surgery on his left shoulder in 2006 and recovery therefrom, Plaintiff could not have worked as a result of that injury. There is no doubt that Plaintiff had other medical problems regarding his neck and back; however, the evidence is clear that those injuries are not related to this collision. Thus, there is no credible evidence from which the Court can conclude that Plaintiff has economic loss in excess of $50,000.

Finally, Plaintiff's claim for pain and suffering also fails because he has not demonstrated that he suffered a serious injury as a result of the collision. There is no credible objective medical evidence of a serious injury. As noted above, the only injury that Plaintiff sustained as a result of the collision was to his left shoulder which was completely repaired by the subsequent surgery. All the credible medical evidence leads to the conclusion that Plaintiff's continued pain and suffering is caused by injury to his spine, which is not related to this collision. Accordingly, the Court finds that Plaintiff did not suffer a serious injury as a result of this collision.

## IV. CONCLUSION

After reviewing the trial transcript, the parties' post-trial submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that the Clerk of the Court shall enter judgment in favor of Defendant and close this case because Plaintiff has failed to meet his burden of proof that Defendant breached

the duty of care that it owed to Plaintiff and, alternatively, even if Defendant did breach that duty,

the Court finds that Plaintiff has failed to produce credible evidence that he suffered economic

loss in excess of $50,000 as a result of Defendant's negligence and has failed to produce credible

evidence that he suffered a serious injury as a result of the collision.

**IT IS SO ORDERED.**

Dated: January 11, 2012
        Syracuse, New York


_____
Frederick J. Scullin, Jr.
Senior United States District Court Judge